NEW-YORK,

The People
vs.
Arunah Ran-
dall

2 Involun-
tary man-
slaughter.

This species of crime is said to happen in the commission of an unlawful act, or in a lawful act performed in an unlawful manner. The example of the first is, " where two persons play at sword and buckler, " unless by the king's command, and one of them kills the other, this " is manslaughter, because the original act was unlawful, but it is " not murder, for one had no intent to do the other any personal mis- " chief." Of the second, " Where a workman throws down a piece " of timber into the street and kills a man; this may be either misad- " venture, manslaughter, or murder, according to the circumstances " under which the [original act was done; if it were in a country " village, where few passengers are, and he calls out to all people to " have a care, it is misadventure only; but if it was in London, or " other populous town, where people are continually passing, it is " manslaughter, though he gives loud warning; and murder, if he " knows of their passing, and gives no warning at all, for then it is " malice against all mankind." 4 Blac. Comm. p. 192.

---

*Court of Oyer and Terminer, December, 1820, before the Honorable William W. Van Ness.*

## The People vs. Arunah Randall. *Murder.*

### CASE.

Where a dangerous wound has been given, neither an officer nor any private citizen has a right to force open the door of the assailant's house without a demand and re-

THE circumstances of this case were as follows, a judgment, in one of the Ward Courts of the City, had been given against the prisoner; and upon which judgment, an execution had issued, and was put into the hands of Nathaniel Slawson, a marshall, to be executed.

He went in company with a Mr. Griffin to Randall's house and saw the prisoner; he told the prisoner his business, and exhibited to him the process; he replied that the

execution came unexpectedly upon him, and that he had sued out a certiorari, and had removed the cause to another and higher tribunal, and was at a loss how an execution could issue.

NEW-YORK,

The People
*vs.*
Arunah Randall.

Slawson explained to him the manner the execution had issued, and the prisoner promised to arrange and settle the business in a week. The officer went away, and made no inventory or levy of the prisoner's goods.

Slawson returned to the house at the expiration of the week in company with Mr. Griffin ; they knocked at the door, and was told by a woman, who was either the wife, or supposed to be the wife, of the prisoner, that he was out, and would call and settle the amount of the execution before he came back.

fusal ; but notwithstanding the house is illegally entered, and no deadly weapon used, if the assailant is actuated by a murderous intent, and kills the officer, it will be murder.

Slawson and Griffin called again in two days after, being the 27th of November, 1820, and received a similar answer from the same woman. On the 28th they called again, and was told by the woman that he had gone into the country. Before this time, however, a levy and inventory had been made of the goods and chattels in the house ; it had been made not in the prisoner's house, but in some other, or, at least, not on the premises.

The suspicions of Slawson and his companion being excited that the prisoner was in the house, and being told by some of the neighbors that they had just before seen him, they resolved to break open the outer door. They went again in the afternoon and found the door fastened. Slawson knocked at the door, and the same woman raised the window and desired to know what he wanted. He replied

NEW-YORK that he wanted to see Randall, and upon her saying he had gone into the country, he said he did not believe it, that The People people had told him differently. He requested that her-*vs.* self or Randall would come down and open the door, and Arunah Ran-dall. suffer him to take the goods he had levied on, and repeated the request two or three times, and finally told her that if she did not come down, he would break it open, and take away the goods.

She dared him to break open the door, and threatened him if he did, with the consequences. Slawson told her he did not wish to proceed to extremities, but had rather the prisoner would come down stairs and open the door, and settle it like a gentleman.

Slawson and Griffin then attempted to force open the front door, but failed, and then went round to the back door, forced it open and entered the house. Slawson proceeded through the entry, and had placed his foot on the third step of the stairs, when the prisoner, at the top of the stairs, with a hatchet in his hand, and moving forward down the stairs, towards Slawson, exclaiming as he came, " out of my house, or I'll split your brains out." at the same time brandishing his hatchet. Slawson said to him, " Mr. Randall, don't do that, I am a peace officer." The prisoner followed him within a step of the back door, and as Slawson and his companion were retreating, the prisoner hit Slawson a blow on the arm, aimed at his head and wounded him dangerously.

Slawson and Griffin made the best of their way out of the house. Griffin put Slawson in the hands of a surgeon,

and set a watch over the person and house of the prisoner, and went for a warrant to the Police Office. As he was passing the 7th and 10th Ward Courts, he saw two marshalls, and told the story of the assault upon Slawson, and they observed to him that a warrant was unnecessary—that any man might make the arrest. Mr. Disbrow, the deceased, at the time, was just coming out of the Ward Court; he heard the circumstances, and consented, with some of the other officers of the Ward, to go and arrest the prisoner.

NEW-YORK,

The People
vs.
Arunah Randall.

Disbrow, Griffin, and two or three others, whom Disbrow had pursuaded to go along with him, went to the house, they spoke to the woman at the window, and Disbrow forced open the door, which was fastened, without asking or demanding admission; and as they passed through the entry, Disbrow observed, "here is the old scoundrel's axe," and picked it up, and as he approached the foot of the stairs he laid the axe down and pulled off his coat, and said, "you old scoundrel, give yourself up." The prisoner threw hot water upon them, and said if they came near the stairs he would split their brains out; but they, nevertheless, proceeded up stairs to near the top, when the prisoner, with a hatchet, began "to hack on their heads," striking them four or five times, and reached down after them, still striking, or attempting to strike them. The officers came immediately down, and Disbrow, exclaimed, "for heaven's sake, he has split my brains out." He was taken away, and upon examining the wound, it was found that the brain had been penetrated about two inches, and a very vital part of it wounded. The deceased lived until the Friday following, when he died.

## POINTS OF LAW.

NEW-YORK,

The People
vs.
Arunah Ran-
dall.

His Honor, *William W. Van Ness*, Justice presiding, after a full review of the facts, decided, " that forcing the " door, in the manner before detailed, by Slawson and " Griffin, was unlawful, even if a levy and an inventory " had been made and left in the hands of the prisoner.

" That after Slawson and Griffin had broken open the " door, in the manner before stated, the prisoner had not " only a right to order them out in the peremptory man- " ner he did, but also to use a reasonable force to turn them " out.

" That the conduct of Slawson and Griffin could furnish " no justification for the violent assault upon Slawson, he " was retreating, and had retreated to the door, and no " danger to the person or property of the prisoner could " have been reasonably apprehended at the time the wound " was given.

" That Disbrow, or any private citizen, after a danger- " ous wound is given, had a right to arrest the assailant " without a warrant, to prevent his escape from justice.

" That under the ciscumstances of this case, neither Dis- " brow nor any other person had a right, either with or " without a warrant, to force open the outer door, without " a personal demand and refusal.

" Yet after such forcing the door and entry into the " house, if the deceased had been engaged taking off his " coat, and the prisoner had come down while he was in " the act, and inflicted the mortal wound, he could not be " considered as acting in defence of his person or his pro-

" perty, and would, beyond all doubt, have been guilty of
" murder.

" That if the jury believed the prisoner was frequently
" admonished to surrender ; that the deceased, at the time
" the mortal wound was given, was taking off his coat ;
' that the axe was laid down; that there was time to re-
" flect ; that if, at the time, he was actuated by a murder-
" ous intent, notwithstanding the house was illegally en-
" tered, it would be murder."

*NOTE.—Murder, as described by Sir Edward Coke, adopted the author
of the Commentaries, is, When a person of sound memory and dis-
cretion unlawfully killeth any reasonable creature in being, and un-
der the King's peace, with malice aforethought, either express or
implied.

A short analysis of the law of murder, and some of the most prominent
decisions that have taken place both in England and in this country,
are herein set down.

It is laid down in the books that there must be

1. An actual and unlawful killing. 3 Inst. 47.51: East, P. C. 214.
2. The killing must be malicious. Ibid.
3. The agent must be of sound memory and discretion. Hawk. b.
1. c. 1. § 1.
4. The person must be a reasonable creature. Ibid.

There must be an actual killing. But it is not every killing that amounts
to murder. To kill a person by working up his imagination or pas-
sions, is not murder; althoug it was done with a malicious intention,
and although the sufferer immediately died. 1 Hale, 429 : 4 Comm.
204. No. 5.

There must
be an actual
and unlawful
killing.

NEW-YORK,   Nor is it murder to take away the life of a person by swearing false in a
Court of Justice. Fost. 131. 3 Inst. 48: 4 Blac. Comm. 197. Nor is
it murder for a physician or a surgeon to give his patient medicine
with intent to cure, and which has a different effect from that intend-
ed, and kills him. 1 Hale, 429.

The People
*vs.*
Arunah Ran-
dall.

If a sheriff has suffered a voluntary escape, he cannot lawfully arrest the
prisoner again on the same execution, and if the officer be resisted
and killed, in an attempt to do so, it will not be murder. 4 Mass. T.
R. 391.

Nor is it murder where the party who gives the medicine is not a physi-
cian, if the intent was to cure, and the person dies. Mass. Rep.

And if the wound is not mortal, but by injudicious applications becomes
so, and it can be shown that the medicine and treatment caused the
death, it is not murder or even manslaughter. But where the wound
was sufficient, and the natural conclusion would be that it would pro-
duce death, it will be murder, notwithstanding it may be doubtful that
a recovery could have been effected by proper medicine and attend-
ance. 1 Hale, 428. Nor is it murder if the party survives a year
and a day from the wound received, or the injury inflicted ; and the
day on which it is done is always reckoned as one. 4 Blac. Comm.
197.

There are a thousand ways the crime may be committed, and which are
all equally criminal; poisoning, shooting, stabbing, striking, starving,
or drowning, or any other mode of death the wicked can devise, or
the unfortunate suffer.

It is unnecessary the death should be the direct and immediate result of
the act; it may be indirect and consequential. The cases in the
books are numerous and satisfactory.

Where death
does not pro-
ceed imme-
diately from
the act, but is
a final conse-
quence of it.

The case of the unnatural and cruel son who carried his sick father in
a cold and inclement season, from town to town, for the purpose of
easing himself of his maintainance, and against his will, and in con-
sequence of wanting proper sustenance and attention died, it was
held murder. 1 Hale, 431, Palm. 545. So of the mother who left
her new-born infant in an orchard, covered with leaves, and in which

situation it was killed by a kite, it was held murder. Ibid. So also the case of the parish officers who carried a child from parish to parish, and for want of care and nourishment it died—it was held murder. To confine a prisoner in a damp cell whereby he contracts a distemper and dies, is murder. Fost. 322, 2 Ld. Raym. 1578 ; and so where the jailor confined the person in his custody with another who had the small-pox, in consequence of which he died, was held murder. 2 Stra. 856. And so when a master neglected to furnish his apprentice with sufficient food and attendance when sick, whereby he died, it was also held murder. 1 L. 137. 2 Campb. 650. Placing poisonous filth at a man's door, which corrupts the air and poisons him so that he dies, is murder. 1 Hale, 432. If the owner of a dangerous animal let it loose, knowing its wicked habits, with an intention to injure and do mischief, the following authorities declare it murder. 4 Blac. Comm. 197 : 3 East, 595 : 6 Hawk. b. 1. ch. 31.

*NEW-YORK,*

The People
*vs.*
Arunah Randall.

Malice is the dictate of a wicked, depraved, and malignant heart ; *une disposition a faire une chose, mal* and is not said properly of spite or malevolence to the accused in particular, as an evil design in general. 4 Comm. 198.

The killing must be malicious.

Malice is of two kinds, express or implied. Express malice is where one, with a sedate, deliberate mind and formed design, doth kill another, which formed design is evidenced by external circumstances discovering that inward intention ; as lying in wait, antecedent menaces, former grudges, and concerted schemes to do him bodily harm. 4 Comm. p. 198.

Express malice.

Malice implied is, where an officer is killed in the lawful discharge of his duty. Fost. 308. Or even where a private citizen interferes to prevent the commission of a felony, and is killed. Ibid. It is also implied where death happens in the execution of an unlawful act or design. Fost. 258 : 1 Hale, 466. And, lastly, where even in heat of blood, where the weapon or violence is such as might naturally cause death. 1 Hale, 454, Kel. 64.

Implied malice.

NEW-YORK,

The People
*vs.*
Arunah Ran-
dall.

Some of the important leading cases both of express and implied mali‹ cious killing, are the following: To shoot the poultry of another, without the intention of stealing them, and by accident kill a man, is not murder; but if he shot them with the intention of stealing them and kill a person by accident, it is murder. Kel. 117, Fost. 258. To shoot at one man and kill another, the express malice is transferred, and it is murder. 1 Hale, 466. And so where poison is laid to kill one person and is taken by another. Ibid. If drugs be given to a pregnant female to destroy her unborn infant, it is also murder.

It is important, what kind of instrument, and the degree of violence with which it was used.

*Express ma-
lice, from the
weapon used.*

A park-keeper found a boy stealing wood in the park, and tied him to a horse's tail and beat him, the horse ran off and killed the boy, it was held murder. 1 Hale, 454. And also, where a schoolmaster stamp- ed violently on the belly of one of his scholars. Ibid. 473, 474. And it was also held murder where the master struck his servant with an iron bar, whereof he died. Kel. 64. But where the instrument is proper for correction, and the provocation great, a father had received frequent complaints concerning his son who had been guilty of steal- ing, and in his anger chastised him with a rope, it was held, after great deliberation, manslaughter. 1 P. C. 261. And where the own- er of an inclosure found a person committing trespass, and in the heat of the moment beat him, and by accident killed him, it was held manslaughter only. And in the case of the shepherd who, being provoked at his boy, threw a stake at him and killed him, it was decided to be manslaughter only. 1 Leach, 378.

*Where death
takes place up
on the spur of
the occasion.*

Every killing is supposed to be felonious, and it lays upon the party char- ed, to prove it not so. Fost. 255. If one, with a sword drawn, make a pass at another whose sword is undrawn, and a combact ensues, if the former be killed, it will only be manslaughter in the latter; but if the latter fall, it will be murder in the former, for, making the pass be- fore his adversary's sword was drawn, he evinced an intention not to

fight with, but to destroy him. Chitty, C. L. vol. 3. p. 167, Kel. 61. NEW-YORK, If two bailiffs arrest a man, and he abuse, and threaten, and strike them, and bring pistols declaring that he will not be forced from his house, and on high words arising between them, and on the bailiffs being struck and provoked, they fell on him and kill him, they will be guilty of manslaughter only. Ibid. 6 Harg. St. Tr. 195, Fost. 292.

The People
vs.
Arunah Randall.

Where the provocation is great and the injury attrocious, and no actual violence used, malice will not be presumed. Where a man finds another in actual adultery with his wife, and in the heat of passion kills him, it is not murder. Fost. 296. But if the first transports of his passion have had time to cool, and he then kills him, it will be murder. Ibid.

Malice will not be presumed.

Malice is implied in every case of wilful poisoning, although no evidence of a quarrel or epmnity is proved. 1 Hale, P. C. 455. To kill another without any provocation, or without some provocation, malice is implied. 1 Hawk. P. C. 82. To kill an officer in the faithful execution of his duty, is murder, and the law will imply the highest malice. 1 Hale, P. C. 465. So to kill any private person in endeavoring to suppress an affray, or to apprehend a felon, malice will be implied. Ibid. Malice will also be implied where the party was in the act of committing a felony, and accidentally kills another. Ibid. 465. If one shoots at A. and kills B. it is murder. So where poison is laid for A. and it is taken by B., and proves fatal. Ibid.

Implied malice from poison, &c.

If a sheriff has suffered a voluntary escape, he cannot lawfully arrest the prisoner again on the same execution, and if the officer be resisted and killed in an attempt to do so, it will be murder. 4 Mass. Rep. 391.

If the act of killing be in itself attended with probable dangerous consequences to the deceased, and be committed deliberately, malice will be presumed, unless some sufficient excuse or provocation should be shown; for the law infers that the natural probable effects of any act, deliberately done, were intended by the agent. Ibid.

NEW-YORK, | If a man, under color or claim of legal authority, unlawfully arrest, or actually attempt to offer or to arrest another, and he resist, and in the resistence kills the aggressor, it will be manslaughter.

The People
*vs.*
Arunah Randall.

To counsel another to commit suicide, and he does commit it in consequence of such advice, the adviser is guilty of murder. 13 Mass. 356.

Every act which apparently must do harm, which is done with intent to do harm, and without provocation, and of which death is the consequence, is murder. Addis, 148.

Unlawful killing, with a design to kill, is murder in the first degree ; if with a design only to hurt, it is murder in the second degree. Ibid. 283.

4 Dall. 146. | Wherever it appears, from the whole evidence that the crime was, at the moment, deliberately or intentionally executed, the killing is murder in the first degree. 1 Brown's App. p. 221. It is sufficient to constitute the crime, if the circumstances of wilfulness and deliberation were proven, although they arose and were generated at the period of the transaction. Addis, 257. If the party killing had time to think, and did intend to kill, for a minute, as well as an hour or a day it is a deliberate, wilful, and premeditated killing, constituting murder in the first degree. Smith's Trial, Pamphlet, p. 231 ; O'Hara's case.

Drunkenness does not incapacitate a man from forming a premeditated design of murder , but as drunkenness clouds the understanding, and excites passion, it may be evidence of pasion only, and want of malice and design. Addis, 257. See further, where malice will be implied. Fost. 256, 7: 2 Roll. 461: 2 Ld. Raymond, 1487: 1 Hawk. 127: Addis, 148—161—256.

The agent must be of sound memory and discretion. | The application of those rules that determine the exemption or accountability of persons for murder, is precisely the same as those relating to other crimes and offences.

To strike a pregnant woman, whereby the child is killed, is not murder, NEW-YORK, because it was not at the time in *rerum natura:* nor to give her a por_ tion, which produces the same effect. 3 Inst. 50 . Hawk. b. 1. c. 31 ; 1 The People *vs.* Hale, 433. But if it is born alive, and afterwards dies in consequence Arunah Ran- of the beating or poison, it is murder. Hawk. b. 1. c. 31. § 17, 18. dall.

Bac. abr. Murder and Homicide, letter B. The law in England has in this respect been altered by 43 Geo. 3 c. 58 § 1. It declares it a felo- The party killed must be ny to administer deadly poison or other noxious, destructive substance, a reasonable with intent to procure miscarriages to a woman quick with child. being alive & The common law definition of the words " under the king's peace,' in the king's peace. seems to include every description of persons but an alien enemy in the heat of war· 1 Hale, 433. It is laid down in the books to slay an attainted criminal without warrant, is murder, and his wife may support an appeal. Ibid.

We have no statute similar to the 43 Geo. 3. c. 58 in this State. The crime, therefore, of administering drugs to a pregnant woman, or by blows, or any other means destroying her child before it is born, is only a misdemeanor.

It is murder to shoot or otherwise unlawfully kill a person committing a misdemeanor, although he could not otherwise have been taken. 4 Comm. p. 201.